Ethan J. Brown (SBN 218814)
ethan@bnsklaw.com
Geoffrey A. Neri (SBN 258802)
geoff@bnsklaw.com
**BROWN, NERI, SMITH &KHAN, LLP**
11766 Wilshire Blvd., Suite 1670
Los Angeles, CA 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

Adam Gonnelli (pending *pro hac vice* application)
agonnelli@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RUN THEM SWEET, LLC, a California limited liability company, on behalf of themselves and those similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>CPA GLOBAL LIMITED, a foreign entity formed under the laws of the Island of Jersey, Channel Islands, and CPA GLOBAL NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>          Defendants. | CASE NO. 3:16-cv-03662<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Breach of Contract;<br>(2) Unjust Enrichment - Restitution;<br>(3) Violation of California's Unfair Competition Law<br>    (Cal. Bus. & Prof. Code § 17200)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Run Them Sweet, LLC ("RTS" or "Plaintiff"), on behalf of itself and all other similarly situated persons and/or entities, brings this action against Defendants CPA Global Limited and CPA Global North America, LLC (together, "Defendants"), and alleges, upon personal knowledge as to its own conduct, and upon information and belief as to the conduct of others, as follows:

## NATURE OF THE ACTION

1. Plaintiff RTS is a medical diagnostics company focused on the nutritional state of a patient. RTS holds United States (U.S.) patents and patent applications that are registered in foreign countries. To maintain the foreign registration of these patents, RTS must pay annual fees to the foreign patent registrars in each country for each of its patents.

2. To manage these payments, RTS contracted with CPA Global Limited ("CPA"), which agreed to handle the payments in exchange for a fixed fee per patent.

3. Under the contract, attached hereto as Exhibit "A", CPA was to pass on the costs of registration in the foreign country to RTS.

4. However, CPA greatly overcharged RTS by inflating certain fees and outright inventing others. CPA does not even adhere to its own rate structure.

5. In order to hide this conduct, CPA issues opaque invoices that are devoid of any meaningful breakdown of its billing practices so that it is nearly impossible for its clients to tell if they are being overcharged.

6. CPA's contracts are also themselves misleading. For example, CPA makes it appear that its so-called "Country Charges" are fees imposed by foreign entities, when they are simply additional charges made up by CPA.

7. On information and belief, Defendants use the same contract for all of their clients as it does for RTS and overcharges them in a similar manner.

8. RTS brings this class action lawsuit on behalf of all U.S. patent holders who have been injured by Defendants' systematic practice of overbilling and

inflating of fees charged to its clients who engage Defendants to renew their patents annually in foreign countries.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because at least one Plaintiff or class member is from a different state than at least one Defendant, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.

10. Defendants are subject to personal jurisdiction because Defendant CPA Global Limited conducts substantial business in the State of California directly and through its affiliate Defendant CPA Global North America, LLC, such that they have significant, pervasive and substantial contacts with the State of California.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because the Plaintiff resides in this District.

## PARTIES

12. RTS is a limited liability company duly organized under the laws of the State of California, having its headquarters and principal place of business in San Francisco, California.

13. Defendant CPA Global Limited is a foreign entity organized under the laws of the island of Jersey, Channel Islands, with its headquarters and principal place of business located on the island of Jersey, Channel Islands. Defendant transacts business in the State of California by offering for sale and selling its services to customers in California and in this District.

14. Jersey is a party to the Hague Convention of 15 November, 1965, on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial matters. Accordingly, Defendant may be served with process pursuant to Federal Rule of Civil Procedure 4(f)(2)(A), by sending the document to the central authority

of Jersey, The Attorney General, Jersey, Channel Islands, for service at Liberation House, Castle Street, St. Helier, JE1 1BL, Jersey, Channel Islands.

15. Defendant CPA Global North America, LLC, is an entity formed under the laws of the State of Delaware and, on information and belief, is the U.S. affiliate of CPA Global Limited. On information and belief, CPA Global North America, LLC maintains an office in San Mateo, California and, at all relevant times for purposes of this Complaint, Defendant has done substantial business in the State of California.

## FACTUAL ALLEGATIONS

16. RTS is the owner of numerous patents and patent applications (the "Patents") around the world. The Patents must be periodically renewed in each country in order to maintain and protect RTS's intellectual property rights.

17. Such renewals require the payment of certain fees to, and may require the filing of documents with, patent offices in each country in which Plaintiff has registered Patents. Timely renewal of patents in each country is vital because patents are lost or abandoned if not properly renewed.

18. CPA is in the business of managing foreign registration payments for U.S. patents. In order to manage its payments, RTS entered into the Renewal Service Agreement ("Agreement") with CPA on March 18, 2016. The Agreement set forth the terms on which CPA would renew RTS's patents. Section 5.1 of the Agreement states that:

> Our basic fees in relation to Services that comprise the provision of renewal of intellectual property rights registrations are set out in Clause 4 of the Operating Procedures.

19. Clause 4 of the "Operating Procedures" states that: "We will charge you an administration charge based on Schedule 1, attached."

20. Schedule 1 sets forth a list of "Administration Charges" based on the number of annual payments the client makes. The more annual payments, the lower the per-patent Administration Charge.

21. The Administration Charge was agreed to be the only charge imposed by CPA for its services. The rest of the charges were agreed to be costs passed on to clients by CPA.

22. The next section, Section 5.2, states that:

> In addition to our fees there will be also be payable by you the charges made by the relevant registries ("**Official Fees**") in each jurisdiction and which vary from time to time and, where applicable "**Country Charge**" [sic] which is set out in a tariff (which may vary from time to time), a current copy of which is available on request.

23. The language "In addition to our fees" leads clients to believe that what follows, including the "Country Charge" are not fees charged by CPA.

24. In addition, the placement of the description of the "Country Charge" as part of the sentence describing the fees charged by the "relevant registries" leads clients to believe that the "Country Charge" is a charge imposed by foreign offices, not by CPA.

25. Further, the description of the "Country Charge" as something that is found on a "tariff" leads the clients to believe that the "Country Charge" is a government-imposed fee.

26. However, the "Country Charge" is not related to any charges or tariffs imposed by foreign patent registrars. It is a charge that CPA invented and is effectively a second fee charged by CPA.

27. Section 5.3 of the Agreement further states that when currency must be exchanged, such currency will be "converted at our rates from time to time." But these rates are far in excess of any reasonable exchange rate on the relevant dates.

28. When RTS was invoiced by CPA it was for amounts far in excess of what RTS should have been charged based on the Agreement. (*See* attached <u>Exhibit "B"</u>). The invoices did not even correspond to CPA's own fee schedule.

29. In addition, the invoices only provided a total amount due for each renewal. They failed to give any details, explanations, or itemizations.

30. For example, an invoice sent to RTS by CPA in July of 2015 charged RTS $1006.63 for a renewal in Europe. The invoice did not list a breakdown of the charges. None of CPA's invoices do.

31. According to the schedule provided by CPA, the Administrative Fee charged by CPA would be $200, leaving $806.63 in other charges. According to the rates charged by the foreign patent office, the foreign patent office fee was €465 (Euros). On the date of the invoice, the exchange rate was roughly $0.905 U.S. Dollars to one Euro, which would yield a U.S. Dollar cost for the foreign patent office fee of $513.81.

32. There are no agent fees or other fees associated with renewal in the country at issue.

33. According to the contract, RTS should have been charged $713.81 but was charged, and paid, $1006.63 – $292.82 more than it should have been charged.

34. For another renewal in Canada, RTS was charged, and paid, $686.68.

35. According to the schedule provided by CPA, the Administrative Fee charged by CPA would be $200, leaving $486.68 in other charges. According to the rates charged by the foreign patent office, the "Official Fee" was $100 Canadian. On the date of the invoice, the exchange rate was roughly $1.27 USD to one Canadian dollar, which would yield a dollar cost for the foreign patent office fee of $78.74.

36. In addition, there is an agent fee required in Canada of approximately $125 Canadian. On the date of the invoice, $125 Canadian would be $98.46 USD.

5
CLASS ACTION COMPLAINT

37. Adding the "Official Fee" and the Agent Fee to CPA's $200 Administrative Fee equals $375.20.

38. Accordingly, under the contract, RTS should have been charged approximately $375.20, but was charged, and paid, $686.68 – $311.48 more than it should have been charged.

39. The invoices received by RTS and the members of the Class do not contain a breakdown of charges. This opacity is an unfair practice which makes it impossible for members of the Class to find any explanation for these overcharges.

## CLASS ACTION ALLEGATIONS

40. RTS brings this action as a class action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of a class (the "Class") defined as: All persons or entities who entered into a Renewal Service Agreement using Defendants' standard agreements. RTS also seeks to represent a subclass of all Class members who reside in California (the California Subclass").

41. Excluded from the Class are: (i) Defendants and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (ii) any entity in which Defendant has a controlling interest, and Defendants' legal representatives; (iii) the judges to whom this action is assigned and any members of their immediate families; and (iv) any member of the Class who timely elects exclusion.

42. RTS reserves the right to amend or modify the definition of the Class or Subclass with greater specificity or further division into subclasses as discovery and the orders of this Court warrant.

43. **Numerosity.** The members of the Class and the Subclass are each so numerous that their individual joinder is impracticable. The proposed Class and Subclass each likely contain thousands of members. The true number of Class and Subclass members can be ascertained through information and records in Defendants' exclusive possession, custody or control.

44. **Commonality.** There are questions of law and fact common to the Class and Subclass which predominate over any questions which may affect only individual members of the Class, including but not limited to the following:

(a) Whether Defendants breached the Renewal Service Agreements with Plaintiff and the Class by systematically overcharging Plaintiff and the Class;

(b) Whether Defendants have been unjustly enriched;

(c) The nature of the "Country Charge" and whether it is a charge imposed by Defendants;

(d) Whether Defendants have inflated their own "Administrative Charges";

(e) Whether Defendants have inflated the "Official Fees";

(f) Whether the Agreements are an unfair or deceptive business practice under California law;

(g) Whether the exchange rates charged by Defendants are unlawfully excessive under the contracts;

(h) Whether Defendants' failure to provide detailed invoices is an unfair or deceptive practice;

(i) Whether Defendants' acts and practices violated the California Unfair Competition Law ("UCL"); and

(j) Whether declaratory or injunctive relief should be appropriately awarded to the Plaintiff and the Class.

45. **Typicality.** RTS's claims are typical of the claims of the members of the Classes because Plaintiff's and the Classes' claims arise out of the same course of conduct by Defendants and are based on the same legal theories. Plaintiff and the members of the Classes were overcharged, deceived, and subjected to an unfair business practice in the same manner in their transactions with Defendants, and their injuries are a direct proximate result of the same wrongful overbilling practices.

46.     **Adequacy of Representation.** RTS will fairly and adequately protect the interests of the Class because its interests do not conflict with the interests of the members of the Classes they seek to represent. RTS has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

47.     **Rule 23(b)(3).** Questions of law and fact common to the Classes predominate over any questions affecting only individual members, and a class action is a superior method for adjudicating this controversy.

48.     Questions of law and fact common to the Classes predominate over individual issues. Resolution of the questions listed in ¶ 44, *supra*, will advance the litigation on behalf of all Class members. Individual issues are likely limited to the amount of damages.

49.     A class action is superior to other methods of litigating this dispute. The monetary damages or other pecuniary loss suffered by individual members of the Class is relatively small compared to the burden and expense that would be entailed by individual litigation of claims against the Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. As such, individual members of the Class do not have a strong interest in controlling the prosecution of separate actions. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issued raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. Plaintiff knows of no other litigation addressing this issue on a class wide basis

50.     **Rule 23(b)(1) and (b)(2).** In the alternative, the Class may also be certified because:

    (a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

    (b)    Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole; and/or

    (c)    Certification of specific issues such as Defendants' liability is appropriate.

51.     Adequate notice can be given to the Class directly using information maintained in Defendants' records or through notice by publication.

52.     All Class members have been damaged in the same fashion by the same conduct. The degree of damages suffered by individual members is calculable according to an ascertainable formula.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Contract

### (Brought on behalf of the Class)

53.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

54.     Defendants entered into written contracts with Plaintiff and the Class for renewal of patents. The contracts included that Defendants would charge "Official Fee(s)" and "Country Charge(s)" to Plaintiff and the Class.

55.     Plaintiff performed all obligations under the contract by paying all invoiced fees and charges associated with the renewal of its patents.

56. All conditions required by the contract for Defendants' performance occurred.

57. Defendants breached these contracts by, among other things: (i) overcharging Plaintiff and the Class for services provided under the contract in excess of agreed upon rates outlined in Defendants' fee schedule, (ii) invoicing Plaintiff and the Class in an opaque manner, and (iii) concealing both the types of fees and the specific amount of fees it charged Plaintiff and the Class.

58. Defendants' breaches of contract caused actual damages to Plaintiff and the Class. Plaintiff and the Class suffered pecuniary damages as a result of Defendant's breach of contract, and were forced to expend substantial time, effort, and money in the attempt to determine the extent of Defendants' overbilling.

## SECOND CAUSE OF ACTION

### Unjust Enrichment – Restitution

### (Brought on behalf of the Class)

59. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

60. Defendants have received a benefit, the retention of which would unjustly enrich Defendants, by its conduct in overcharging Plaintiff and the Class.

61. Defendants should be required to return that benefit, disgorge their unlawful gains and provide restitution to Plaintiffs and the Class.

## THIRD CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

### (Brought on behalf of the California Subclass)

62. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

63. Plaintiff has standing to pursue this claim under California's UCL because Plaintiff suffered an injury-in-fact and lost money as a result of Defendants'

unfair competition. Specifically, Plaintiff expended more money in the transaction than it otherwise would not have due to Defendants' conduct.

64. In the course of its trade or commerce, Defendants have engaged in and continues to engage in a general business practice whereby it fails to charge Plaintiff and the Subclass for services provided under the contract at the agreed upon rates as described in Defendants' fee schedule, and provides misleading information regarding this practice to increase the charges assessed to Plaintiff and the Subclass.

65. **Unfair business acts and practices:** Defendants are systematically (i) overbilled and inflated fees for services provided to Plaintiff and the Subclass under the contract, (ii) invoiced Plaintiff and the Subclass in an opaque manner, and (iii) concealed both the types of fees and the specific amount of fees it charged Plaintiff and the Subclass. Such practices are devoid of utility, outweighed by the gravity of harm to Plaintiff and the Subclass who had to pay for the improper assessment of fees and charges. Defendants' practices are also immoral, unethical, oppressive, and unscrupulous and cause injury to consumers, which outweigh its benefits.

66. **Fraudulent business acts and practices**: Defendants' practices of charging Plaintiff and the Subclass amounts that were above the agreed upon rates for services provided under the contract constitute fraudulent business acts and practices under the UCL because the conduct has a capacity to deceive consumers who assume and believe that Defendants are acting in good faith, charge appropriate rates, do not overcharge and act lawfully.

67. Each of Defendants' unlawful, unfair or fraudulent practices enumerated above was the direct and proximate cause of financial injury to Plaintiff and the Subclass. Plaintiff and the Subclass are entitled to have Defendants disgorge and restore to Plaintiff and the Subclass all monies wrongfully obtained by Defendants as a result of the conduct as alleged herein.

68. Pursuant to section 17203 of the California Business and Professions Code, Plaintiff and the Subclass seek an order of this Court enjoining Defendants

from continuing to engage in unfair and deceptive practices and any other act prohibited by law, including the acts set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court order the following relief and enter judgment against Defendants as follows:

A. Declaring that this action is a proper class action, certifying the nationwide Class and California Subclass, designating Plaintiff as representative of the nationwide Class and California Subclass, and appointing Plaintiff's attorneys as Class Counsel;

B. Enjoining Defendants from continuing the unfair and deceptive business practices alleged in this complaint, including ceasing to charge improperly assessed Administrative Fee(s), "Country Charge(s)" or "Official Fee(s)" and providing accurate and reliable information regarding its billing practices;

C. Requiring Defendants to disgorge, restore, and return all benefit and monies wrongfully obtained;

D. Ordering Defendants to pay actual damages to Plaintiff and members of the nationwide Class and California Subclass;

E. Ordering Defendants to pay an award of reasonable attorneys' fees and costs of this action; and

F. Ordering such other and further relief as the Court deems necessary, just, and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

DATED:  June 29, 2016                BROWN, NERI, SMITH & KHAN LLP

By: /s/ Geoffrey A. Neri

Geoffrey A. Neri
Ethan J. Brown

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED:  June 29, 2016                **BROWN, NERI, SMITH & KHAN LLP**

By:   /s/ Geoffrey A. Neri

Geoffrey A. Neri
Ethan J. Brown
**BROWN, NERI, SMITH &KHAN LLP**
11766 Wilshire Blvd., Suite 1670
Los Angeles, CA 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

Attorneys for Plaintiff